IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:06cr223-MEF [WO] |
| | ) |
| KAREN KILGO ROBINSON, *et. al*, | ) |
| | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The case is currently pending on a motion to suppress evidence filed by Defendants Karen Kilgo Robinson (Karen Robinson) and Adam Lamar Robinson (Adam Robinson). They seek suppression of evidence, specifically a Weihrauch Sport German Silencer (the Weihrauch Silencer), a personal computer, pipe bombs, improvised explosive devices, and homemade firearm silencers.[1]  Upon consideration of the motion and the testimony at the evidentiary hearing, the Magistrate Judge RECOMMENDS that the motion be DENIED.

**FACTS**

Based on the parties' briefs and testimony at the hearing held on January 16, 2007, and to a preponderance of the evidence,[2] the Court finds as follows:  On June 1, 2006, United States Customs and Border Protection (hereinafter Customs) Inspector Daniel

---

[1]Federal law defines a "firearm silencer" or "firearm muffler" as "any device for silencing or muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.  18 U.S.C. § 921(a)(24) (2000).

[2]The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence.  United States v. Beechum, 582 F.2d 898, 913 n.16 (5th Cir. 1978), citing Lego v. Twomey, 404 U.S. 477, 489 (1972).

Nugent (Inspector Nugent)[3] intercepted a package from Malburg, Germany while examining international mail on an x-ray machine at the Port of Chicago in Chicago, Illinois.[4] Tr. at 5, 9; Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 1. The package was addressed to Adam Robinson at 1708 Formosa Court, Deatsville, Alabama, 36022 USA (hereinafter Defendants' residence) and contained six Euros of postage. Tr. at 10; Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 1. Inspector Nugent testified that the postage indicated that the package contained merchandise that had some weight. Tr. at 10. The package was marked "CO-2-Set."[5] Tr. at 11. Inspector Nugent observed the x-ray image of the package, which displayed a metal sphere that he suspected was a firearms silencer.[6] Tr. at 9. He testified at the hearing that in his 3-years of experience, he had seen four or five silencers previously.

---

[3] At the hearing, Inspector Nugent testified that he has served in this position for three and a half years. Tr. at 5. He indicated that he has inspected over millions of parcels at the Port of Chicago, a port-of-entry. Tr. at 6. Inspector Nugent defined a port-of-entry in his official capacity as "the first place that the mail enters the country." Id.

[4] During the suppression hearing, Inspector Nugent indicated that all international mail first arrives at the Port of Chicago on commercial airlines. The mail is then taken off the plane by ramp workers from the airline and presented to the United States Postal Service. The Postal Service separates international mail into "letter class" mail or "parcel post" mail and forwards "parcel post" mail to Customs on a conveyor belt for inspection. Tr. at 6-8. He defined "letter class" mail as "letters of correspondence and letters that usually does (sic) not contain merchandise." Tr. at 7. Letter class mail is generally contained in small envelopes. Tr. at 10. He defined "parcel post" mail as "mail that would contain merchandise, bulk mail, (sic) usually costs more than regular letter class mail would cost to send." Tr. at 7.

[5] $CO_2$ generally represents carbon dioxide, a chemical compound composed of one carbon and two oxygen atoms. See Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 1 n.1. Inspector Nugent testified that a CO-2-Set is "a little air cartridge that you use for an air gun." Tr. at 11.

[6] Inspector Nugent indicated that all international "parcel post" mail is inspected on an x-ray machine. Tr. at 7, 8, 18-19.

Tr. at 6.  Inspector Nugent then opened the package.  Tr. at 9.  He testified that he opened the package because the contents of the package on the x-ray screen looked similar to silencers he had seen come through the mail in the past.  Tr. at 19-20.  Specifically, Inspector Nugent indicated that a silencer appears "almost black" on the x-ray screen whereas a CO-2 set appears "much lighter blue."  Tr. at 20.  Upon opening the package, Inspector Nugent found a hollow, black spherical piece of light metal wrapped in a piece of paper with a "L-wrench," which he believed was a silencer.  Tr. at 9-11; Pl.'s Exh. A.  Inspector Nugent forwarded photographs of the metal object to an inspector with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) in Chicago who confirmed Inspector Nugent's belief.  See Tr. at 9-10, 12.

Inspector Nugent forwarded the Weihrauch silencer to Immigration and Customs Enforcement Special Agent David Henderson (Agent Henderson) in Montgomery, Alabama.  Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 2.  Agent Henderson transferred the package to Special Agent Timothy Fitzpatrick (Special Agent Fitzpatrick), ATF, in the Montgomery Field Office, who, in turn, forwarded the package to the ATF Firearms Technology Branch in Washington, D.C.  Id.  Personnel at the ATF Firearms Technology Branch confirmed that the Weihrauch silencer was an item that required registration with the National Firearms Registration and Transfer Record.  Id.  No silencers, however, were registered to Adam Robinson.  Id.

On June 14, 2006, Chief United States Magistrate Judge Charles S. Coody

authorized an anticipatory search warrant for Adam Robinson's residence. Id. The following day, federal agents conducted a controlled delivery of the Weihrauch silencer. Id.; Adam Robinson's Motion to Suppress at Attach. A-B. Once Karen Robinson took the package inside the residence, federal agents executed the search warrant. Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 2; Karen Robinson's Motion to Suppress at 2. The agents seized the Weihrauch silencer as well as pipe bombs, improvised explosive devices, and homemade firearm silencers. Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 2. None of the items seized was registered with the National Firearms Registration and Transfer Record. Id.

The agents also seized personal computers believed to contain evidence relating to the illegal possession or manufacture of firearm silencers or destructive devices. Id. On August 8, 2006, United States Magistrate Judge Susan Russ Walker authorized the Government to search Adam Robinson's computer, which contained evidence of Adam Robinson's possession or manufacture of illegal firearms or destructive devices. Id.; Adam Robinson's Motion to Suppress at Attach. C-D.

## DISCUSSION

Both Karen Robinson and Adam Robinson argue that Inspector Nugent did not have a reasonable suspicion of criminality to support the warrantless search of the package addressed to Adam Robinson, violating the Fourth Amendment and 19 U.S.C. § 482. Thus, they maintain that the Court should suppress the Weihrauch silencer from

evidence. Adam Robinson's Motion to Suppress at 2, 4; Karen Robinson's Motion to Suppress at 2-3, 7. Consequently, the items searched and seized from their residence were fruits of the warrantless search of the package, which the Court also should exclude. They further argue that once the Court excludes the Weihrauch silencer, the warrant to search their residence lacked a substantial basis for determining probable cause. Adam Robinson's Motion to Suppress at 2-4 (citing Wong Sun v. United States, 371 U.S. 471 (1963); Illinois v. Gates, 462 U.S. 213, 238-39 (1983)); see Karen Robinson's Motion to Suppress at 3-4.

Individually, Adam Robinson further argues that the Court should also suppress the computer's evidence, because that evidence was also a fruit of the unconstitutional searches and seizures of the package and his home. Once the Court suppresses the Weihrauch silencer and the items from his home, Adam Robinson maintains that the affidavit in support of the computer's search warrant also lacked a substantial basis for determining probable cause. Adam Robinson's Motion to Suppress at 4-5 (citations omitted). Karen Robinson asserts that the good faith exception created in United States v. Leon, 468 U.S. 897, 922 (1984), does not permit admission of the evidence seized from Defendants' residence for two reasons: (1) the warrant for the search of Defendants' residence failed to particularize the items the officers intended to seize during their search; and (2) the warrant, containing only conclusory allegations, was so devoid of probable cause that the officer unreasonably believed in its validity to conduct the search.

See Karen Robinson's Motion to Suppress at 4-7 (citations omitted).

The Government counter argues that Karen Robinson does not have standing to contest the search of the package. Pl.'s Response to Karen Kilgo Robinson's Motion to Suppress at 3. It also argues that because the Weihrauch silencer entered the United States through a port-of-entry, the Customs official was not required to have probable cause or a reasonable suspicion of criminality to search the package. Rather, Customs officials are statutorily authorized to conduct unlimited searches of international mail at the border. See Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 7 (citing 19 U.S.C. § 1582; United States v. Pringle, 576 F.2d 1114, 1117 (5th Cir. 1978)); see Pl.'s Response to Karen Kilgo Robinson's Motion to Suppress at 8 (citations omitted). The Government further argues that because the Customs official had the authority to search and seize the Weihrauch silencer at the port-of-entry, the two search warrants were duly authorized. Thus, the search and seizure of evidence from Defendants' residence was proper. See Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 7. With respect to Karen Robinson's warrant argument, the Government responds that the warrant sufficiently described the items the agents sought to search under the facts of this case and that Karen Robinson has failed to show any intentional or false misrepresentations in the warrant affidavits. Pl.'s Response to Karen Kilgo Robinson's Motion to Suppress at 9-10 (citations omitted).

    **A.**    **The Weihrauch Silencer**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[7]  "The Amendment protects persons against unreasonable searches of "their persons [and] houses." Minnesota v. Carter, 525 U.S. 83, 88 (1998). Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002).

Here, the Customs official found the Weihrauch silencer contained in a package addressed to Adam Robinson from Germany. The initial search and seizure of the package, a piece of international mail, took place at the Port of Chicago, a border area. See United States v. Pringle, 576 F.2d 1114, 1117 (11th Cir. 1978) (holding that a port of entry constitutes border areas) (citations omitted). Two different statutes govern– 19 U.S.C. §§ 482, 1582 – Customs' searches of incoming international mail. Section 482 deals with Customs searches of envelopes "wherever found" in which agents reasonably suspect there is contraband or dutiable goods that "[were] imported contrary to law." 19 U.S.C. § 482; United States v. Ramsey, 431 U.S. 606, 612-13

---

[7]The entire text of the Amendment provides:

[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV.

(1977).[8]  Section 1582, however, deals with Customs searches at the border; it provides "for the search of persons and baggage" and authorizes the Secretary of Treasury to promulgate regulations for searching international mail.[9]  The regulations applicable to international mail searches are contained in 19 C.F.R. §§ 145, *et seq*.  In particular, section 145.2(b) provides that "all mail originating outside the Customs territory of the United States, whether sealed or unsealed, is subject to Customs examination" (with no suspicion requirement).  19 C.F.R. § 145.2(b).  Thus, it is well established that warrantless searches at international borders of the United States may be performed even without a suspicion of criminal activity.  United States v. Ramsey, 431 U.S. 606 (1977); United States v. Haley, 743 F.2d 862, 864 (11th Cir. 1984); United States v. Hernandez-Cuartas, 717 F.2d 552, 555 (11th Cir. 1983); United States v. Pringle, 576 F.2d 1114,

---

[8]Section 482 reads: "[a]ny of the officers or persons authorized to board or search vessels may . . . search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law."  19 U.S.C. § 482.

[9] Section 1582 reads in its entirety that
The Secretary of the Treasury may prescribe regulations for the search of persons and baggage and he is authorized to employ female inspectors for the examination and search of persons of their own sex; and all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations.
19 U.S.C. § 1582.

1116 (5th Cir. 1978).[10] [11]

At the hearing, counsel for Karen Robinson essentially conceded that she does not have standing to contest the Weihrauch silencer's entry into evidence. Tr. at 28-29. Even if counsel did not concede the issue, there is no dispute that the package was not addressed to Karen Robinson. She therefore would not have standing to contest the search and seizure of the Weihrauch silencer, because she lacked a legitimate expectation of privacy in the package when it entered the United States. Cf. United States v. Richards, 638 F.2d 765, 769-70 (5th Cir. 1981) (finding that Defendant had standing to contest the search of a package because it was sealed and addressed only to him although under a fictitious name); United States v. Villarreal, 963 F.2d 770, 774-75 (5th Cir. 1992) (holding individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names). The Court now turns to Adam Robinson's arguments concerning the Weihrauch silencer.

Inspector Nugent testified that the package entered the United States at the Port

---

[10]Other circuits also have uniformly held that customs officials have unlimited discretion to search incoming international packages. United States v. Glasser, 750 F.2d 1197, 1200-05 (3d Cir. 1984), cert. denied, 471 U.S. 1018 (1985); United States v. Emery, 541 F.2d 887, 889 (1st Cir. 1976); United States v. Odland, 502 F.2d 148, 150-51 (7th Cir. 1974), cert. denied, 419 U.S. 1088 (1974).

[11]Section 145.3(a), however, provides that Customs officers may open and examine "sealed letter class mail" only if they "have reasonable cause to suspect the presence of merchandise or contraband." 19 C.F.R. § 145.3(a). "Sealed letter class mail" means "letter class mail sealed against postal inspection by the sender." 19 C.F.R. § 145.1©. "Letter class mail," in turn, means "any mail article, including packages, post cards, and aerogrammes, mailed at the letter rate or equivalent class or category of postage." 19 C.F.R. § 145.1(b). It is unconverted that the Weihrauch silencer was found in a mail package, rather than" letter class mail."

of Chicago from Germany and was addressed to Adam Robinson at his residence in Alabama. Because the Weihrauch silencer was contained in a package originating from outside the United States and was addressed to a residence within the United States, Inspector Nugent was statutorily authorized under 19 U.S.C. § 1582 to search the package without reasonable suspicion to suspect that it contained contraband.

The Court also must test whether the search was constitutionally reasonable under the Fourth Amendment. Under the circumstances presented, the Court finds that the search was reasonable. Inspector Nugent intercepted the package after its arrival at the Port of Chicago, a border area, and noticed that it contained merchandise of some weight. He also observed that the package was destined for Adam Robinson in Alabama from Germany and declared to contain a CO-2 Set. He examined the x-ray image of the contents, which displayed an almost black image of a metal sphere. Having observed the x-ray image of at least 4 silencers previously, Inspector Nugent suspected that the contents contained a silencer and opened the package. These facts indicate that it was reasonable for Inspector Nugent to search the package. United States v. Pringle, 576 F.2d at 1117 (finding the warrantless search of incoming international mail at a port of entry reasonable and upholding the constitutionality of section 1582) (citing United States v. Odland, 502 F.2d 148, 151 (7th Cir. 1974)); see also United States v. Ramsey, 431 U.S. at 616-25 (" Border searches[] . . . have been considered to be 'reasonable' by the single fact that the . . . item in question had

entered into our country from outside."); United States v. King, 517 F.2d at 352-53. Therefore, the Court concludes that the search of the package was also valid under the Fourth Amendment. Adam Robinson's arguments to suppress the Weihrauch silencer fail.[12]

### B.   Defendants' Fruits Arguments

As presented above, Defendants maintain that the items searched and seized from their residence were fruits of the warrantless search of the package. Adam Robinson extends this argument further to include the computer. The Court does not agree that the evidence seized from their residence and the computer were fruits of the warrantless search of the package, because the Customs official's search and seizure of the Weihrauch silencer was constitutionally authorized. Cf. Wong Sun v. United States, 371 U.S. 471, 488 (1963) (excluding narcotics and statements which resulted from an unlawful invasion of a defendant's bedroom).

### C.   The Search Warrants

The Fourth Amendment also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a

---

[12]The Government further argues that the facts presented demonstrate that the Customs official had reasonable cause to suspect the package contained contraband. Pl.'s Response to Adam Lamar Robinson's Motion to Suppress at 7; Pl.'s Response to Karen Kilgo Robinson's Motion to Suppress at 8. The Court need not reach this argument.

crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).

A court reviewing the issuance of a search warrant by a Magistrate Judge is not to conduct a de novo probable cause determination, but is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. Massachusetts v. Upton, 466 U.S. 727, 732-33 (1984) (per curiam).

> The task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Gates, 462 U.S. at 238-239 (internal citation omitted). The reviewing court must decide whether there was a "substantial basis" to find probable cause solely upon consideration of the information presented to the issuing judicial officer. United States v. Lockett, 674 F.2d 843, 845 (11th Cir. 1982).

"The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990) (quoting Lockett, 674 F.2d at 846). To find probable cause, a judge is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of

the evidence and the type of offense." United States v. Ayers, 924 F.2d 1468, 1479 (9th Cir. 1991) (quoting United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir. 1986)).  In weighing the evidence, the issuing judge may rely on the conclusions of experienced law enforcement officers.  Ayers, 924 F.2d at 1479.

With respect to the warrant for Defendants' residence, Chief Magistrate Judge Coody had before him the affidavit of Special Agent Fitzpatrick, ATF.  The affidavit contained detailed information gathered from Customs' search of the package at the Port of Chicago, including that the recipient of the package was Adam Robinson at his home address, and the agent's finding that Defendant had not registered the Weihrauch silencer or any firearm with the National Firearms Registration and Transfer Record and was a multi-convicted felon for possession of a pistol.  It also indicated, based on the agent's experience in law enforcement since 1992, that most people who possess firearms store them at home and possess other related items.  Finally, the warrant described the agency's plans for a controlled delivery of the package.

After careful consideration, the Court concludes that the warrant issued for the search of Defendants' residence was supported by probable cause.  The detailed information presented in the affidavit would warrant a person of reasonable caution to believe that a search of Defendants' residence would uncover the Weihrauch silencer as well as other firearms.  The warrant conveyed to Magistrate Judge Coody that the Weihrauch silencer was mailed to Adam Robinson from Germany, but it was not

registered as required by law. It further indicated that Adam Robinson was previously convicted for possession of a pistol and that based on the agent's experience, most people store their firearms in their home along with other items related to firearms. These facts are sufficient to support a finding of probable cause to search for the Weihrauch silencer and any firearms. Thus, issuance of the warrant to search Defendants' residence for the Weihrauch silencer and any firearms did not violate the Fourth Amendment.[13]

With respect to the warrant for Adam Robinson's computer, Magistrate Judge Walker also reviewed another affidavit from Special Agent Fitzpatrick, ATF. The affidavit contained detailed information about Adam Robinson's access and use of the Internet on his personal computer, the agent's discussions with Special Agent Neil Harper, who specializes in computer forensic examinations, the items seized from Defendants' residence, which included a paper listing a German-based website, and the agent's belief, based on his experience, that individuals who possess and manufacture firearms and explosives typically use the Internet to research and purchase firearms and related items. The affidavit also indicated that Special Agent Harper informed the affivant that the Internet has numerous website page It is unconverted that the silencer was found in a mail package, rather than " letter class mail." s explaining

---

[13]Because the Court finds that the warrant to search Defendants' residence was supported by probable cause, it need not reach Karen Robinson's two arguments that the good faith exception does not apply in this case.

14

how to construct homemade silencers through the use of common household items as well as destructive devices, pipe bombs, and improvised explosive devices through the use of explosive powders.

    Again, after careful consideration, the Court concludes that the warrant issued for the search of Adam Robinson's computer was supported by probable cause.  The detailed information presented in the affidavit would warrant a person of reasonable caution to believe that a search of his computer would uncover evidence of the possession or manufacture of firearms, silencers, and explosives in electronic digital media form.  The affidavit specifically described the items seized from Defendants' residence, including six bottles of tannerite binary explosive, three homemade firearm silencers, the Weihrauch silencer, which contained instructions referring the reader to its website, two suspected homemade pipe bombs, one including shrapnel, a container of pyrodex black powder, two suspected 37mm improvised explosive devices, and a box of homemade firework devices.  The affivant indicated that the Internet contains websites which explain how to construct homemade silencers, destructive devices, pipe bombs, and improvised explosive devices from common household items and explosive powders, like shrapnel.  Moreover, based on the agent's experience, Special Agent Fitzpatrick stated that people who possess and manufacture firearms and explosives typically research and purchase related items on the Internet.  He stated that the computer was found among Adam Robinson's personal affects.  Special Agent

Fitzpatrick further indicated that a document found during the search of Defendants' residence referenced a website for tracking points on one's license and that Adam Robinson drove a truck for a living. These facts are sufficient to support a finding of probable cause to search the computer for evidence of the possession or manufacture of firearms, silencers, and explosive devices in electronic digital media form. Thus, issuance of the warrant to search Adam Robinson's computer did not violate the Fourth Amendment.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Defendants' motions to suppress (Doc. #38, #40) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation within a period of **13 days** from the date of mailing or transmittal to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    DONE this the 21st day of February, 2007.

                                             /s/ Wallace Capel, Jr.
                                             WALLACE CAPEL, JR.
                                             UNITED STATES MAGISTRATE JUDGE